Houtz *v.* Coraopolis Borough School District et al.,
Appellants.

Argued October 2, 1947. Before Maxey, C. J., Drew,
Linn, Stern, Patterson, Stearne and Jones, JJ.

*Thomas Lewis Jones,* for appellants.

*John A. Metz, Jr.,* with him *John A. Metz* and *Metz
& Metz,* for appellee.

*Lewis F. Adler,* for Pennsylvania State Education Association, amicus curiæ.

OPINION BY MR. JUSTICE PATTERSON, November 10, 1947:

H. E. Houtz, appellee, brought this action in mandamus against the Board of Directors and the School District of the Borough of Coraopolis, Pennsylvania, appellants, to compel his reinstatement as a professional employe and to pay to him salary due as provided by a contract executed in terms required by the Teachers' Tenure Act.[1] This appeal is from the order of the court below entering judgment in favor of Houtz and directing his reinstatement and the payment of salary due him. There are two issues: (1) Is a "Principal of Schools" a professional employe within the language of the Teachers' Tenure Act; and, (2) May a board of school directors, for personal reasons, abolish a position and suspend a principal of schools thereby circumventing the requirements of the Teachers' Tenure Act?

The Board of Directors of the School District of the Borough of Coraopolis, in September, 1929, employed as a teacher H. E. Houtz, and on May 3, 1937, he was given a contract in the form required by Section 2 of the Teachers' Tenure Act of 1937: Act of 1937, P. L. 213, Sec. 2, 24 PS Sec. 1126. On September 9, 1943, he was given a new contract in the same form but at a higher salary and continued to teach under that contract until June 30, 1946. By a resolution duly recorded on the minutes of the board on May 29, 1946, appellee was duly elected "Principal of Schools", effective July 1, 1946, and on June 13, 1946, by a resolution of the board his salary was established at $4500. Thereafter, the president and secretary of the school board and appellee executed a contract dated May 29, 1946, in the form prescribed by the Act providing for his employment as

---

[1] Act of 1937, P. L. 213, as amended, 24 PS 1121, et seq.

a professional employe to teach at a salary of $4500 annually, effective July 1, 1946. Houtz served as "Principal of Schools" over all the public schools of the district from July 1, 1946, until June 30, 1947, performing duties entirely administrative and supervisory.

Appellant board on May 14, 1947, appointed a special investigating committee of three of its members to conduct an investigation of Houtz and to report to it. An investigation was duly made but no charges were filed. The committee, however, consulted special counsel regarding means of removing Houtz. At the request of a member of the committee, Dr. Lantz, County Superintendent of Schools, on June 2, 1947, wrote to the board advising election of "someone as supervising principal who was legally certificated by the Department of Public Instruction for that position." Upon receipt of the letter, the committee made its report and on June 11, 1947, a resolution was duly adopted by the board and placed on its minutes stating its intention to elect a supervising principal. The board forthwith adopted a second resolution abolishing the office of principal of schools and suspending the present occupant of the position, Harry E. Houtz, appellee, from employment "as of July 1, 1947 and until such time as the office of Principal of Schools may be recreated."

On June 19, special counsel prepared a letter to the Department of Public Instruction requesting approval of actions taken by the board. This letter was sent by the chairman of the special committee and subsequently returned with an approval by Francis B. Haas, Superintendent of Public Instruction, dated July 17, 1947. On July 9, a second letter was received from the county superintendent identical with the former except that there was added thereto a paragraph recommending abolition of the position of "Principal of Schools" if the board adopted the recommendation to elect a supervising principal.

Appellee, on June 23, 1947, was advised by letter from the secretary of the board that the position of Principal of Schools had been abolished and that he was suspended as of July 1, 1947. He promptly notified the board of his intention to assert his rights under the Teachers' Tenure Act and on July 9, 1947, filed this complaint in mandamus. After filing of an answer and new matter, to which a reply was filed, a hearing was had before the court below.

The court below concluded that: (1) Houtz was a duly elected professional employe entitled to the protection of the Teachers' Tenure Act; and, (2) that abolition of the office of "Principal of Schools" was used as a method of circumventing the Act to effect appellee's removal as a professional employe. Judgment was entered in favor of Houtz and appellants were directed to reinstate him to his position as a professional employe.

Section 1 of the Act of 1937, P. L. 213, as amended, 24 PS Section 1121, provides: "The term 'professional employe,' as used in this act, shall include teachers, supervisors, supervising principals, principals, directors of vocational education . . . and any regular full-time employe of a school district who is duly certified as a teacher." Notwithstanding inclusion of the word "principal" appellants contend that addition of the words "of schools" removed appellee from the protection of the Tenure Act since "principal of schools", not being included in the list of specific offices set forth in the Act, is not a mandated office.

The construction urged is not only contrary to the salutary purpose of the Act ,*Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 454, 50 A. 2d 354), but also suggests an unwarranted and unreasonable judicial interference with the legislative function. The legislature has specifically enumerated offices to be protected by the Act, one of which is the office of "principal." Addition of the words "of schools" does not operate to remove appellee from that classification.

As principal, he is a teacher entrusted with special duties of direction and management. Cf. *Taintor v. City of Hartford,* 123 Conn. 515, 197 A. 173; *Downey v. School Committee of Lowell,* 305 Mass. 329, 25 N. E. 2d 738; *McDevitt v. School Committee of City of Malden* (Mass.), 10 N. E. 2d 100. The common and accepted understanding of principal is one who is a teacher entrusted with duties of direction and management of one or more schools.

Performance by appellee of administrative and supervisory duties to the exclusion of classroom teaching, cannot be held to constitute an abandonment of rights under a Tenure contract "to teach". *Jacobs v. Wilkes-Barre Township School District,* supra, is not controlling. In that case this Court held that the evidence sustained a finding of an abandonment of the contract. The board and the teacher evidenced such intention by their respective actions. There is no evidence in the instant case which could sustain such a finding. Appellee promptly exercised every effort to protect his contractual rights not only by asserting his contentions in writing but also by quickly instituting the instant action. Appellee did not abandon his contract as a teacher and has not occupied an unmandated office.

Having concluded that appellee is a professional employe within the meaning of the Act, it is unnecessary to consider whether assuming that the position of "Principal of Schools" was an unmandated office, he would, nevertheless, remain protected by his contract by virtue of his being a "regular full-time employe of a school district who is duly certified as a teacher".

Appellants seek to sustain the suspension by asserting that the position of "Principal of Schools" was duly abolished. Section (b) (2) of the Act of 1931, P. L. 243, as amended, 24 PS Section 1126(2) provides: "Any board of school directors (or board of public education) may suspend the necessary number of professional employes, for the causes hereinafter enumerated: . . . cur-

tailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors (or board of public education), approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction." The court below held the attempted suspension was abortive and not legally effective for the reason that the board could not circumvent the provision of the Tenure Act, stating: ". . . it is obvious from his testimony that the method of suspending the principal and abolishing the position was done for the purpose of getting rid of him without having made charges against him."

"Where a school board undertakes to terminate a contract with a professional employee, the procedure set forth in the Act must be strictly followed, and failure on the part of the board to comply therewith renders the attempted dismissal abortive . . .": *Jacobs v. Wilkes-Barre Township School District,* supra, 452, 50 A. 2d at 356. In *Ehret v. Kulpmont Borough School District,* 333 Pa. 518, 528, 5 A. 2d 188, it was said: ". . . a department may not be abolished merely to circumvent the provisions of the Act and to accomplish the dismissal of a teacher for political or arbitrary reasons by unlawful subterfuge. See Essinger v. New Castle, 275 Pa. 408, 410; State ex rel. Karnes v. Board of Regents, 222 Wis. 542, 269 N. W. 284." In *Jones v. Holes,* 334 Pa. 538, 6 A. 2d 102, suspension of a teacher due to a decrease in enrollment in various courses rendering a teacher unnecessary to the proper operation of a school was sustained. This Court pointed out, however (p. 544) : "There is no complaint or inference here that the school board acted arbitrarily from either personal or political motives, nor is there any complaint that in the assignment of instructors to the various courses, there was an unlawful subterfuge to circumvent any provisions of the Act."

The evidence supports the finding of fact that abolition of the office of Principal of Schools was for the sole purpose of effecting the discharge of appellee and circumventing the prohibition contained in the Teachers' Tenure Act. In that regard the court below stated: "We are impressed by the fact that the very time the School Board was considering charges and hearing complaints made against the principal it took its action and suspended the principal without having made any charges. It would not come with such bad grace from the School Board if it said it abolished the position of principal and at the same time created the position of supervising principal. It did not do so. One witness testified that no charges were made because it might embarrass certain individuals . . . When Conroy, the chairman of the Education Committee and witness for the plaintiff, took the stand he made it positive that Mr. Houtz, the principal, was removed because of certain complaints which were made and it is obvious from his testimony that the method of suspending the principal and abolishing the position was done for the purpose of getting rid of him without having made charges against him . . . We also have the testimony of two other members of the School Board, one of whom said that Houtz must go because a member of the Board didn't like him, and another member of the Board asked the School Solicitor whether it wasn't possible to get rid of Mr. Houtz through his position as Principal of schools."

Affirmance of the judgment in the instant case is not to be considered as restricting the powers of a board of directors lawfully and without regard to personal and partisan considerations to abolish a position and suspend teachers unnecessary to the proper operation of the school. See *Jones v. Holes,* supra; *Ehret v. Kulpmont Borough School District,* supra.

Judgment affirmed.