Robert J. Bruckner, Petitioner *v.* Lancaster County Area Vocational-Technical Joint School Operating Committee, Respondent.

Area Vocational-Technical School Committee for Lancaster County, Petitioner *v.* Robert J. Bruckner, Respondent.

Submitted on briefs September 13, 1982, to President Judge CRUMLISH, JR. and Judges BLATT and MAC-PHAIL, sitting as a panel of three. Reargued May 10, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MAC-PHAIL and DOYLE.

*Thomas W. Scott, Killian & Gephart,* for petitioner, Robert J. Bruckner.

*Clarence C. Kegel, Jr., Barley, Snyder, Cooper & Barber,* for respondent.

OPINION BY JUDGE ROGERS, November 10, 1983:

The Secretary of Education upheld the action of Lancaster County Area Vocational Technical Joint School Operating Committee taken December 27, 1979,

dismissing Robert J. Bruckner as a professional employee on the grounds of intemperance, persistent and willful violation of the school laws, persistent negligence and incompetency. The Secretary's order awarded back pay until December 27, 1979. To No. 3107 C.D. 1980, Bruckner filed a petition for review of the Secretary's order upholding his dismissal. To No. 3210 C.D. 1980, the School Committee filed a petition for review of the Secretary's back pay. In *Bruckner v. Lancaster County Area Vocational-Technical Joint School Operating Committee*, 70 Pa. Commonwealth Ct. 522, 453 A.2d 384 (1982), a panel of this court affirmed the Secretary's order insofar as it upheld Bruckner's dismissal but reversed the order insofar as it awarded Bruckner back pay.

We granted Bruckner's application for reargument before the court *en banc* and having conducted reargument now withdraw our previous opinion and orders. By this definitive opinion and orders we affirm as we did before, the Secretary's action upholding Bruckner's dismissal and we also affirm the Secretary's order, which we earlier reversed, awarding Bruckner back pay.[1]

Bruckner, was, as we have noted, a professional employee of the Lancaster County Vocational-Technical Joint School. His last day of teaching was January 27, 1978, on which date he left school for medical causes referred to in the record as a nervous condition or as mental illness.

There ensued a considerable correspondence between the School Committee and Bruckner, which we record because it is germane to the issue of whether Bruckner expressed a definite intention to abandon his employment.

---

[1] This case was reassigned to the writer on September 13, 1983.

By letter dated February 3, 1978, the director of the Vo-Tech School asked Bruckner to furnish a doctor's excuse for his absences. By letter dated February 10, 1978, Bruckner reported his scheduled admission for treatment to the Philadelphia Veterans Hospital on February 13, 1978 and expressed his intention to return to work as soon as possible. He enclosed with this letter a physician's statement verifying his illness. By letter dated February 28, 1978, the director of the Vo-Tech School requested Bruckner to furnish further documentation. By letter dated March 8, 1978, one of Bruckner's physicians responded that he was unable to determine when Bruckner would be able to return to work. By letter dated March 10, 1978, the Vo-Tech director informed Bruckner that his sick leave would expire March 13, 1978 and that from March 14, 1978, he would be carried on a no pay basis. By letter dated April 27, 1978, the business manager of the Vo-Tech School sent checks to Bruckner for accumulated salary and sick leave. By letter dated May 5, 1978, Bruckner informed the business manager, with copy to the director that he would be discharged from the Veterans Hospital on May 5, 1978; that his condition was "somewhere in the recuperative and therapeutic stages"; and that he hoped to be able to return to his duties in the fall.

By letter dated May 30, 1978, the school director informed Bruckner that if he wished to remain an employee, he must ask for an extended medical leave within ten days and that if the school did not receive such, Bruckner's employment would be considered terminated. On or about June 5, 1978, Bruckner sent to the school director a copy of his letter of May 5, 1978 sent to the school business manager on which he wrote that this was his response to the May 30, 1978 letter.

On June 22, 1978, the Joint School Committee placed Bruckner on medical leave until August 1, 1978. On June 26, 1978, the director wrote Bruckner informing him of his medical leave status. He also instructed Bruckner to provide no later than August 1, 1978, either a written request for extended medical leave or, in the alternative, complete documentation as to his medical condition and his ability to perform his teaching duties. The letter closed with the admonition that if these requirements were not complied with, "we will assume that you have resigned and terminated your employment."

Bruckner did not personally answer this missive. He showed it to a doctor at the Veterans Hospital who by a letter received by the school director on July 27, 1978, informed the latter that Bruckner had left the hospital contrary to his treating physician's advice on May 8, 1978 and that as of that time it was recommended that the appellant allow himself a period of three to four months outside the hospital before returning to work.

On August 24, 1978, the School Committee adopted a resolution that the appellant had resigned because no response to their letter of June 26, 1978 had been received. A letter notifying Bruckner of this action was mailed to him on August 29, 1978. By letter dated August 28, 1978, Bruckner advised the school director that he still intended to teach during the fall semester.

On September 5, 1978, the first day of school, Bruckner appeared at the school. He presented a letter from the acting clinical director of the Philadelphia Veterans Hospital giving that physician's opinion that Bruckner was capable of teaching full time and to continue to do so throughout the 1978-1979 school year. The director referred Bruckner to

the School Committee's resolution of August 24, 1978 declaring him to have resigned. Bruckner was not permitted to work.

In February, 1979, Bruckner's counsel demanded his reinstatement with back pay and benefits. The School Committee then charged Bruckner with incompetency, persistent negligence, persistent and willful violation of the school laws and intemperance. Hearings were conducted and on December 27, 1979, the School Committee dismissed him on these charges.

## No. 3107 C.D. 1980

This is Bruckner's appeal from his dismissal on December 27, 1979, after hearing on the charges just above-mentioned. We agree with Bruckner that a professional employee may not be dismissed prior to written notice from the school district designating the cause for termination of the contract between the parties and stating that an opportunity to be heard would be provided upon written request by the employee for a hearing. Section 1121 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1121. Section 1122, 24 P.S. §11-1122, sets forth the valid causes for the termination of the contract of a professional employee by the school district and Section 1127, 24 P.S. §11-1127 provides that "before any professional employee . . . is dismissed" he must be given a written statement of the charges and a hearing thereon.[2] *See* as one of

---

[2] The School Code provides explicitly for only two means of termination of a professional employee's contract—the employee's resignation and dismissal for cause or causes described in the Code, after hearing, if requested. The Supreme Court provided a third in *Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 50 A.2d 354 (1947)—mutual recision by expression of a definite intention to abandon the contract by the employee and acquiescence therein on the part of the employer.

many cases so declaring, *West Shore School District v. Bowman,* 48 Pa. Commonwealth Ct. 104, 409 A.2d 474 (1980). Hence, Bruckner was not lawfully dismissed from his employment until December 27, 1979.

With respect to the substantive propriety of that dismissal, we remain of the opinion that the charges brought by the School Committee are amply supported in the record. Indeed, as we previously observed "the record is replete with evidence . . . that Bruckner was not qualified to be teaching. Incompetence is . . . demonstrated . . . by . . . unsatisfactory ratings, by his failure to submit a curriculum, by . . . instances of lack of control . . . in allowing card playing in the classroom etc. . . . Persistent negligence is evidenced by his inability to cope with his students and by his failure to follow prescribed school board procedures. . . . Moreover, he . . . violated the school's rules as to parties in the classroom, early dismissals of the students and numerous other instances of unprofessional behavior, despite warnings to desist." *Bruckner v. Lancaster County Area Vocational Technical School Authority,* 70 Pa. Commonwealth Ct. at 526, 453 A.2d 386.

## No. 3210 C.D. 1980

This is the appeal of the School Committee from the Secretary of Education's order that Bruckner be paid his salary until the date of his dismissal, after hearing, on December 27, 1979. The School Committee's case is founded on *Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 50 A.2d 354 (1947), in which the Supreme Court concluded that the provisions of the School Code concerning the causes for the termination of a professional employee's contract were not intended by the legislature to restrain or prevent mutual recognition by the parties of the termination of the contract, citing case

authorities to the effect that it is always competent for the parties to a contract to show that by express agreement or actions that the contract was abandoned. The Supreme Court found in *Jacobs* that the employee, who had absented herself from her work for more than two whole years, had "expressed, through her actions, a definite intention to abandon the contract" and that the action of the school board in employing a permanent teacher to replace her was "an act of, or acquiescence in, the abandonment," 355 Pa. at 454, 50 A.2d at 356. The facts of the case at hand are quite different. The employee in *Jacobs* is described by the Supreme Court as having voluntarily and without notice remained away from her work during the latter part of the first of the three school years involved in that case. Here Bruckner left work in January, 1978 because he was ill. He continued ill during the spring and summer of 1978 and was treated in a hospital during part of that time. More importantly, as the correspondence as we have recorded earlier shows, during this absence he faithfully responded to the School Committee's repeated inquiries as to his health and prospects and, far from expressing by acts or deed an intention to abandon his employment, he consistently expressed his intention to return to his work at the Fall term in 1978. This case is very like *West Shore School District v. Bowman, supra,* where he held that an employee who, like Bruckner, was absent for medical reasons and who informed her employer of her state of health had not expressed an intention to abandon her contract. Neither did Bruckner express an intention to abandon his contract; he expressed his intention to continue to teach.

We agree with the Secretary of Education that Bruckner's contract did not terminate by mutual

recision so that Bruckner is entitled to back pay from the beginning of the 1978-1979 school year until December 27, 1979.

We affirm all aspects of the Secretary of Education's order.

ORDER IN 3107 C.D. 1980

AND Now, this 10th day of November, 1983, our opinion and order made December 23, 1982 are withdrawn and the order of the Secretary of Education of November 20, 1980, is affirmed.

ORDER IN 3210 C.D. 1980

AND Now, this 10th day of November, 1983, our opinion and order made December 23, 1982 are withdrawn and the order of the Secretary of Education of November 20, 1980, is affirmed.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I dissent because I believe that Bruckner abandoned his employment and, therefore, is not entitled to back pay.

The crucial question in determining whether an abandonment has occurred is whether Bruckner took the precautions to guard his job which a reasonably prudent person would have taken. *West Shore School District v. Bowman,* 48 Pa. Commonwealth Ct. 104, 112, 409 A.2d 474, 479 (1979). I do not believe that he did.

As the majority has indicated, during Bruckner's absence, he ably and promptly responded to the School Committee's requests for information as to his health and the prospects of his returning to his employment. Bruckner had, as the majority initially states, expressed that ''he hoped to be able to return

to his duties in the fall [of 1978]." He did not, however, as the majority later indicates, express a definite intention to return to his employment at that time.

Thus, on June 26, 1978, with the fall term fast approaching and teaching assignments no doubt being made, the school director wrote to Bruckner in order to ascertain his intentions. He instructed Bruckner to respond by August 1, 1978, with either a written request for an extension of his medical leave or documentation of his ability to resume his teaching duties. The instructions were accompanied by notice that, if he did not comply, Bruckner would be presumed to have resigned and terminated his employment. Bruckner, however, failed to comply with the instructions and merely wrote the school director on August 28, 1978, one month later, that he intended to teach during the fall semester. Under these circumstances, I believe that one cannot say that Bruckner took the necessary precaution to guard his job which a reasonably prudent person would have taken. I would therefore deny his request for back pay.

Judge BLATT joins in this dissent.

---

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent from that part of the majority opinion which affirms the Secretary's award of backpay.

Although the facts of this case have already been outlined, *Bruckner v. Lancaster County Area Vocational-Technical Joint School Operating Committee,* 70 Pa. Commonwealth Ct. 522, 453 A.2d 384 (1982), I believe that a brief highlighting of those facts is necessary here.

Bruckner's last day of teaching at the School was January 27, 1978 at which time he left the school to seek medical help. He was subsequently admitted to the Veterans Hospital in Philadelphia for treatment of a nervous condition and was placed on a medical leave of absence until August 1, 1978. The School Committee instructed him, by letter of June 26, 1978, to inform the School of his intentions regarding the fall semester and, if he intended to return, to provide medical documentation as to his ability to perform his teaching duties. The last sentence of this letter, which was underscored, stated:

> *Unless you comply with these requirements on or before August 1, 1978, we will assume that you have resigned and terminated your employment with the Lancaster County Area Vocational-Technical Schools.* (Emphasis in original.)

Bruckner did not personally respond to this letter. He did, however, contact Dr. T. Allen Ramsey of the VA Hospital, and Dr. Ramsey wrote to the School on July 13, 1978 saying that, although Bruckner's condition had improved during his stay at the VA Hospital, "despite advice to the contrary by his treating physician, he discontinued treatment and left the hospital on May 8, 1978." Dr. Ramsey recommended that Bruckner *not* return to work immediately and closed his letter with the following disclaimer:

> Since Mr. Bruckner is not presently in treatment here at the VAH we are unable to provide you with information about his condition since discharge.

The record refers to no other communication concerning Bruckner prior to August 1. In fact, the Secretary found that Bruckner was not even certain that Dr. Ramsey had mailed the July 13 letter, and that Bruckner himself never received a copy. On

August 24, however, the School Committee, having received the letter from Dr. Ramsey and not having had any direct communication from Bruckner, nor any positive medical documentation of his health, and being in need of finding a replacement for Bruckner in the face of the rapidly approaching school year, adopted a resolution to the effect that Bruckner's failure to respond should be considered as a resignation from his position. Although Bruckner's letter of August 28, expressing a desire to return was later received, this was deemed too late to permit any changes in the School Committee's plans.

Bruckner sought legal counsel and requested both reinstatement and backpay. The School Committee, apparently as a matter of caution, then conducted hearings, at which time ample evidence of Bruckner's misconduct was presented and he was dismissed as a professional employee on the grounds of incompetency, persistent negligence, persistent and willful violations of school laws, and intemperance. The Secretary affirmed this adjudication but awarded backpay to the date of the School Committee's adjudication and order. In our earlier decision, we rejected Bruckner's arguments relating to an alleged due process violation because of the post-termination hearing, and to hearsay objections to certain evidence presented at the hearing as well as his challenge that the dismissal was not based on substantial evidence. Upon reconsideration now, however, it appears to me that these issues should not have been addressed until a threshold question had been answered, *i.e.* whether or not Bruckner had abandoned or voluntarily terminated his position.[1]

---

[1] Our scope of review in cases such as the one presented here, is limited to a determination of whether or not there was a violation of constitutional rights, an abuse of discretion, or an error of

Section 1121 of the Public School Code (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1121, clearly establishes two bases for terminating a professional employee's contract. One is a written resignation accepted by the school board; the other is termination for cause after hearings. The Supreme Court, in *Jacobs v. Wilkes-Barre Township School District,* 355 Pa. 449, 50 A.2d 354 (1947) approved a third method, that of abandonment and mutual rescission. The test espoused in *Jacobs* was whether or not the employee expressed a definite intention to abandon his or her contract, and an act of acquiescence in such abandonment by the School Board.

It seems to me that the evidence presented here supports a conclusion that Bruckner abandoned his position. He was given ample opportunity during the summer of 1978 to contact the School Committee, yet he chose, for some reason, not to do so. Even after contacting Dr. Ramsey, he never bothered to follow through on this conversation and to confirm whether or not Dr. Ramsey had sent a letter or whether or not the letter was even favorable to him, which it was not. Unlike the teacher in *West Shore School District v. Bowman,* 48 Pa. Commonwealth Ct. 104, 409 A.2d 474 (1979) who maintained communication lines with her employer and reported her medical progress or lack thereof promptly, Bruckner did not respond to the School Committee's letter. The teacher in *Bowman* also informed the school district on a continuing basis of her intention to return to teaching, and this Court, while holding that an abandonment did not occur there, analogized the principles here concerned to

---

law, or whether or not necessary findings of fact are supported by substantial evidence. *Gobla v. Crestwood School District,* 51 Pa. Commonwealth Ct. 539, 414 A.2d 772 (1980).

those of the unemployment compensation cases. In that area, of course, the courts have repeatedly ruled that the burden of keeping an employment relationship alive is on the disabled employee, *Crawford Unemployment Compensation Case,* 196 Pa. Superior Ct. 505, 175 A.2d 168 (1961), and that the courts must decide whether or not the employee took the precautions to guard his job which a reasonably prudent person would take. *Vernon Unemployment Compensation Case,* 164 Pa. Superior Ct. 131, 63 A.2d 383 (1949); *See also Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982) (good faith effort required); *Sabella v. Unemployment Compensation Board of Review,* 52 Pa. Commonwealth Ct. 258, 415 A.2d 722 (1980). Under the facts presented here, I cannot say that Bruckner took the steps a "reasonably prudent person" would take.

I would conclude, therefore, that Bruckner abandoned his position, the School Committee acquiesced in that abandonment, and the contract was mutually rescinded. Regarding backpay, it follows from the above conclusion that none may be awarded.[2]

I would, therefore, affirm the panel's prior orders[3] so that the Secretary's determination that Bruckner

---

[2] *See Kaplan v. Philadelphia School District,* 388 Pa. 213, 130 A.2d 672 (1957).

[3] This conclusion would render much of the panel's earlier opinion obiter dicta. Inasmuch as I would hold that Bruckner abandoned his position, whatever hearings that followed his abandonment were, in essence, a legal nullity. An employee cannot be dismissed after he has already quit. Therefore I would not review the record for substantial evidence.

Bruckner has also raised the issue of whether or not due process is violated by a *post-termination* hearing. The earlier panel opinion cited *Andresky v. West Allegheny School District,* 63 Pa. Commonwealth Ct. 222, 437 A.2d 1075 (1981) as supporting the hearings in the case *sub judice. Andresky,* of course, involved *post-suspension*

should not be reinstated (3107 C.D. 1980) would be affirmed but the award of backpay (3210 C.D. 1980) would be reversed.

President Judge CRUMLISH, JR. and Judge DOYLE join in this dissent.

hearings and is not completely on point with the facts of this case. However, since I would conclude that Bruckner abandoned his position, I find it unnecessary to decide this issue, disposing of the case instead on non-constitutional grounds. *See Atlantic-Inland Inc. v. Board of Supervisors, West Goshen Township*, 48 Pa. Commonwealth Ct. 397, 410 A.2d 380 (1980). The majority here, however, has implicitly rejected Bruckner's due process claim by upholding the dismissal based on the evidence presented at the post-termination hearings.